UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAUREEN M., <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, <br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 24 CV 1434 <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Maureen M. appeals the Commissioner of Social Security's decision denying her application for benefits. For the following reasons, plaintiff's motion [12][1] is granted, defendant's motion for summary judgment [15] is denied, and the decision denying the application for benefits is remanded to the agency for further administrative proceedings. 42 U.S.C. § 405(g).

**Background**

On September 30, 2021, plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning August 26, 2021. [9-1] 17. Plaintiff's claim was denied initially on May 20, 2022, and upon reconsideration on September 12, 2022. [*Id.*] Plaintiff requested a hearing, which was held on February 2, 2023 before an administrative law judge (ALJ). [*Id.*] 13, 35–85. On March 15, 2023, the ALJ issued an unfavorable decision finding plaintiff not disabled from August 26, 2021, the alleged onset date, through the date of the decision. [*Id.*] 17–29.

In the March 15, 2023 decision, the ALJ reviewed plaintiff's disability claim in accordance with the Social Security Administration's five-step, sequential evaluation process. *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023); *Apke v. Saul*, 817 F. App'x 252, 255 (7th Cir. 2020); 20 C.F.R. § 404.1520. At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since August 26, 2021. At step two, the ALJ found that plaintiff has the following severe impairments: degenerative disc disease of the spine, varicose veins, vertigo, and obesity. At step three, the ALJ

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [9], which refer to the page numbers in the bottom right corner of each page.

found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Before turning to step four, the ALJ determined that plaintiff has the residual functional capacity to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, and has no limitations in the total amount of time she is able to sit throughout an 8 hour day. She needs to alternate her position such that she sits for no more than five minutes after standing and/or walking for one half hour. While doing so, she would not need to be off task. She should not be required to focus on a computer screen or phone for longer than 30 minutes without interruption. After viewing a screen for 30 continuous minutes, the claimant must be able to focus on something other than the screen for 1 or 2 minutes before looking at the screen for another half hour. She can occasionally climb ramps and stairs, and she can occasionally stoop, kneel, balance, crouch and crawl, but she can never climb ladders, ropes or scaffolds. The claimant is limited to working in non-hazardous environments, *i.e.*, no driving at work, operating moving machinery, working at unprotected heights, and she should avoid concentrated exposure to unguarded hazardous machinery. At step four, the ALJ concluded that plaintiff was able to perform past relevant work as a composite job of an appointment clerk and a unit clerk. The ALJ continued to step five and made the alternative finding that there are jobs that exist in significant numbers in the national economy that plaintiff could perform, including appointment clerk, unit clerk, and file clerk 2. Accordingly, the ALJ found that plaintiff was not under a disability from August 26, 2021 through the date of the decision.

The Appeals Council denied review on December 18, 2023, [9-1] 1, rendering the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.955 & 404.981; *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021). Plaintiff timely appealed to this Court [1], and the Court has subject-matter jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).[2]

## Legal Standard

The Court reviews the ALJ's decision to "ensur[e] that substantial evidence supported the ALJ's decision and that the ALJ applied the correct legal standards." *Morales v. O'Malley*, 103 F.4th 469, 472 (7th Cir. 2024) (citing *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018)). Substantial evidence is "not a high threshold: it means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). "A reviewing court 'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (alteration in original) (quoting *Gedatus*, 994 F.3d at 900). The Court "will

---

[2] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge [7].

only overturn the ALJ's credibility determination if it is patently wrong, which means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). But where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Dallas H. v. O'Malley*, No. 22 C 50432, 2024 WL 1158378, at *3 (N.D. Ill. Mar. 18, 2024) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

## Discussion

Plaintiff argues that the ALJ erred in three ways: (1) assessing plaintiff's RFC; (2) evaluating Dr. Subhani's medical opinion; and (3) finding that plaintiff's statements as to the intensity, persistence, and limiting effects of her pain and symptoms were not entirely consistent with the evidence. The Court begins with plaintiff's challenges to the ALJ's credibility determination.

"[A]n ALJ may not discount a claimant's symptom statements 'solely because they are not substantiated by objective evidence.'" *House v. Berryhill*, No. 17 C 3936, 2018 WL 3022678, at *3 (N.D. Ill. June 18, 2018). "Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," 20 C.F.R. § 404.1529(c)(3), "Social Security Ruling 16-3p explains [other] factors to consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms." *Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022) (citing 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. § 404.1529). These factors include daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate symptoms; and treatment, other than medication, that an individual receives or has received. SSR 16-3p, 2017 WL 5180304, at *7–8; 20 C.F.R. § 404.1529(c)(3). The regulations mandate that an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10. In other words, although the Court's review is deferential, "an ALJ still must competently explain an adverse-credibility finding with specific reasons 'supported by the record[.]'" *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015).

Plaintiff argues that the ALJ failed to explain if or how he considered plaintiff's limited activities of daily living. [12] 13–14. Pointing to her hearing testimony, plaintiff asserts that despite the flexibility that plaintiff was afforded when performing daily activities, she was still "quite limited." [*Id.*] And plaintiff argues that the ALJ is required to "explain how he considers any limitations that a claimant encounters when she performs activities of daily living." [*Id.*] 14 (citing *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009)). "[I]n assessing a claimant's alleged symptoms, an ALJ 'is required to evaluate a claimant's activities of daily living and

3

explain why the claimant's activities are inconsistent with her description of her symptoms.'" *Danny T. v. O'Malley*, No. 23 C 15008, 2024 WL 4170207, at *3 (N.D. Ill. Sept. 12, 2024) (quoting *Michelle M. L. v. Kijakazi*, No. 20 C 6793, 2022 WL 3297619, at *11 (N.D. Ill. Aug. 11, 2022)). *See* SSR 16-3p; 20 C.F.R. § 404.1529(c)(3)(i).

The ALJ concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [9-1] 23. The ALJ's decision did not contain a dedicated section for the subjective symptom assessment. Rather, observations on factors relevant to the credibility determination, such as daily activities and treatment history/medications, were woven throughout the ALJ's summary of the record evidence. [9-1] 22–25. For example, in summarizing plaintiff's hearing testimony, the ALJ provided the following discussion of plaintiff's activities:

> She has a cane but usually relies on another person and does not go out alone. She travelled to Florida and walked a block from the condo to the sand. She said she does not watch her grandchildren alone, and gets vertigo when looking at a computer screen. Moving objects in her peripheral vision can cause vertigo, but she drives at least occasionally.

[*Id.*] 22. But "a summary is not a substitute for analysis." *Charlnette R. v. Dudek*, No. 23-cv-03184, 2025 WL 933840, at *5 (N.D. Ill. Mar. 27, 2025) (quoting *Craig R. v. O'Malley*, No. 23 C 50035, 2024 WL 1363664, at *3 (N.D. Ill. Mar. 29, 2024)). *See Rebecca M. B. v. Kijakazi*, No. 22 C 41, 2023 WL 3168894, at *4 (N.D. Ill. Apr. 28, 2023) (noting that although "ALJs need only minimally articulate their analysis, it does not mean that ALJs can recite the cold medical record upfront, and then make conclusions without analysis later in the opinion"); *Shirley A. J. v. O'Malley*, No. 23-cv-113, 2024 WL 1341077, at *5 (N.D. Ind. Mar. 29, 2024) ("Listing or cataloging evidence from the record is not a substitute for analysis or explanation."). The ALJ did not explain how he considered these activities alongside evidence from the medical record or to what extent they affected his assessment of plaintiff's subjective complaints. *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). The only reasoning for finding plaintiff less credible that the ALJ provided here was that plaintiff's testimony that injections did not stop her pain but made it manageable was "inconsistent with medical records showing her injections provided 100% relief of right foot pain . . . and 75% lasting relief of thigh pain." [9-1] 22 (citing [9-3] 1091, 1207, 1216). This is an observation that the ALJ was entitled to make under SSR 16-3p and the Court can clearly follow the ALJ's reasoning. But the ALJ provided no such similar explanation or chain of reasoning for how and to what extent he considered plaintiff's activities.

In summarizing the rest of the record, the ALJ noted other reports of plaintiff's activities, such as that she "gets some relief with medication which is enough to allow

4

her to drive" and "that she watches her 3 year old grandchild all weekend." [9-1] 23 (citing [9-1] 501; [9-2] 519). The ALJ observed plaintiff's report to the consultative examiner that she "drives short distances." [9-1] 24 (citing [9-2] 885).[3] And the ALJ pointed to an April 2022 medical record noting that plaintiff "cares for her 4 year old and baby grandchildren at her daughter's house from Monday to Friday during the school year." [*Id.*] 25 (citing [9-3] 948). In finding Dr. Subhani's opinion not persuasive, the ALJ also noted that plaintiff "is capable of completing activities of daily living . . . drives . . . [and] watches her grandchildren during the week." [*Id.*] Again, the ALJ listed evidence from the record of plaintiff's activities but failed to provide any explanation or analysis as to why the ALJ concluded that these activities and abilities outweighed or were inconsistent with plaintiff's statements of her difficulties and functioning. For example, a vague and general statement that plaintiff is "capable of completing activities of daily living" is insufficient. "ALJs must *explain* perceived inconsistencies between a claimant's activities and the medical evidence." *Jelinek*, 662 F.3d at 812 (emphasis added). *See also Thomas v. Berryhill*, No. 17 C 00241, 2018 WL 3973416, at *4 (N.D. Ill. Aug. 20, 2018) (finding that "although the ALJ briefly described Claimant's testimony about her limited daily activities, she did not explain whether Claimant's daily activities were consistent or inconsistent with the pain and other limitations she claimed to be experiencing").

The ALJ's decision also did not mention the daily activities that plaintiff struggles or has help with, such as cooking, shopping, and cleaning. [9-1] 59 (plaintiff's testimony that her husband does "the big stuff" for cleaning, that she cannot run the vacuum, and that she can clean the kitchen counter off and put dishes in the dishwasher), 238 (function report stating that plaintiff does not prepare her own meals and cannot stand to cook), 293 (stating that she does not do house or yard work because she gets too dizzy, so she has a housekeeper or her children help); [9-3] 948 (reporting to provider that her husband does the grocery shopping and cooking). Plaintiff also testified that she only goes out about once every couple of weeks and that "with Amazon you don't really have to go to the store anymore." [9-1] 57–58. As the ALJ did mention, plaintiff stated that she does not usually go places alone, but rather is with her husband or one of her daughters. [*Id.*] 22, 58. And plaintiff indicated that when she does have to pick something up from the store, she uses a handicap sticker and an electric cart. [*Id.*] *See, e.g.*, *Thomas*, 2018 WL 3973416, at *4 (noting that the ALJ failed to address the plaintiff's "testimony about the extensive limitations she experienced in something as simple as grocery shopping"). The Court recognizes that ALJs "are subject only to the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by

---

[3] Despite consistently relying on plaintiff's ability to drive, [9-1] 22, 23, 24, 26, the ALJ's decision focused on plaintiff's limited ability to do so and did not mention the difficulties that plaintiff reported with driving. *See, e.g.*, [9-1] 73–74 (testifying that she "very rarely" drives and that her doctor's office is "less than a mile"), 239 (stating that she can drive "only for short trips when medicine takes affect [sic]" and that when visiting family, her husband drives), 240 (stating that if she gets dizzy she can't drive and needs someone to drive her); [9-2] 520 (plaintiff's report to a provider that "if she drives farther distances her leg can give out and she has to stop").

5

the claimant[.]" *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). But this also does not relieve ALJs of their obligation to "provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow . . . a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review.'" *Id.* at 1054 (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). And an ALJ "must confront the evidence that does not support [his] conclusion and explain why it was rejected." *Thomas*, 2018 WL 3973416, at *4 (quoting *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)).

Furthermore, as alluded to in the previous paragraph, the ALJ did not address much of the qualifying information plaintiff provided on her ability to engage in certain activities. It is not enough for an ALJ to simply list the activities that plaintiff *can* complete. Rather, "[a]n ALJ is required to consider the limitations in how a claimant performs daily activities." *David S. v. O'Malley*, No. 23 C 15144, 2024 WL 3426806, at *3 (N.D. Ill. July 15, 2024); *Heidi R.*, 2019 WL 13209274, at *4. *See also Moss*, 555 F.3d at 563 ("An ALJ cannot disregard a claimant's limitations in performing household activities."). For example, the ALJ noted that plaintiff "travelled to Florida and walked a block from the condo to the sand." [9-1] 22. It is not clear to the Court whether the ALJ found this supported or discredited plaintiff's allegations. Nevertheless, plaintiff did testify that she completed this walk but that her "ankle really swelled up from that." [9-1] 59. More significantly, at several points throughout the decision, the ALJ noted that plaintiff "was able to complete all of her activities of daily living." [9-1] 24, 26. The medical records that the ALJ cited in support are plaintiff's reports to providers that she is "able to complete all of [her] ADL's such as eating, bathing, using the toilet, dressing and getting up from a bed or a chair independently." [9-2] 906; [9-3] 1216. But plaintiff's function report also includes limitations on her abilities to complete this personal care, stating that she sits on the bed to get dressed, can only take baths with handrails and uses handrails for the toilet, folds laundry sitting down, and that she feeds herself but cannot stand to cook. [9-1] 237, 238. The ALJ did not cite this function report in the decision or otherwise acknowledge its contents. *See, e.g.*, *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (noting that activities like housework, shopping, and driving short distances do not contradict pain complaints, especially where claimant switches between sitting and standing to perform those tasks); *Heidi R. v. Saul*, No. 18 CV 8534, 2019 WL 13209274, at *4 (N.D. Ill. Oct. 11, 2019) ("To say one performs activities of daily living by herself is not to say that she does so without limitations, and the ALJ ignored the parts of Heidi's report in which she described difficulties getting dressed and grooming and having to take breaks and alternate between sitting and standing in performing her daily tasks."); *Thomas*, 2018 WL 3973416, at *4 (finding that "the ALJ appears to have ignored or at least given very short shrift to the numerous qualifications Claimant described as limiting her ability to engage in her daily activities"). The ALJ's reliance on plaintiff's ability to watch her grandchildren also did not demonstrate that the ALJ engaged with the qualifications attached to plaintiff's ability to do so. Despite acknowledging that plaintiff testified

6

that "she does not watch her grandchildren alone," the ALJ repeatedly noted portions of the record in which plaintiff reported to providers that she watches her grandchildren. [9-1] 23, 25, 26. The ALJ's inclusion of this information in finding plaintiff not as limited as Dr. Subhani opined leads the Court to believe that the ALJ found this record evidence inconsistent with plaintiff's subjective symptom complaints. Yet during the hearing, plaintiff emphasized that she is not the one solely in charge of watching her grandchildren:

> I don't watch my grandchildren alone. My husband has watched my oldest grandson for years, he watches him two days a week. And now she's got another baby, now she's got a one-year-old as well, he doesn't watch the one-year-old. So like he's watching them and I will go with him or they will come to our house but he's there . . . or my other daughter will also come and help.

[9-1] 60. Beyond noting that plaintiff "said she does not watch her grandchildren alone," the ALJ's decision did not further engage with this testimony or explain why he questioned plaintiff's credibility or found that the notations in medical records outweighed her statements.[4] A failure to account for or acknowledge the limitations in plaintiff's ability to perform activities of daily living is cause for remand. *See, e.g.*, *David S.*, 2024 WL 3426806, at *3–4; *Mayra M. v. Saul*, No. 18 C 8427, 2019 WL 6716612, at *9 (N.D. Ill. Dec. 10, 2019); *Charles S. v. Berryhill*, No. 17 C 7438, 2019 WL 764059, at *6 (N.D. Ill. Feb. 21, 2019); *Thomas*, 2018 WL 3973416, at *4.

The Court cannot reweigh the evidence, resolve debatable evidentiary conflicts, or determine credibility. *Chavez*, 96 F.4th at 1021; *Gedatus*, 994 F.3d at 900. And the Court is not opining that the ALJ should have found plaintiff more credible or as limited as alleged. Rather, the Court finds that the ALJ's decision failed to build the requisite accurate and logical bridge from the evidence to his conclusions so as to enable the Court to assess "the validity of the ALJ's findings and provid[e] meaningful judicial review." *Thomas*, 2018 WL 3973416, at *4 (citing *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)). *See also David S.*, 2024 WL 3426806, at *4 ("The problem here is that the ALJ ignored evidence and did not supply the requisite sufficient

---

[4] The Court notes that even if plaintiff was able to take care of her grandchildren by herself, consideration of this activity must be handled carefully because courts have emphasized that "[t]he ability to care for children does not equate to the ability to work full-time outside the home." *Spaulding v. Astrue*, No. 11 C 2926, 2012 WL 3308881, at *4 (N.D. Ill. Aug. 13, 2012) (citing *Gentle v. Barnhart*, 430 F.3d 865, 867–68 (7th Cir. 2005)). The Seventh Circuit has specifically warned against reliance on childcare, finding that an ALJ's "casual equating of household work to work in the labor market cannot stand" and that taking care of children, "although demanding, has a degree of flexibility that work in the workplace does not." *Gentle*, 430 F.3d at 867. *See also Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014) (stating the court has "urged caution in equating these activities with the challenges of daily employment in a competitive environment, especially when the claimant is caring for a family member"); *Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010) (noting that the *Gentle* court held that "an ability to work full time could not be inferred" from babysitting); *Senora W. v. O'Malley*, No. 21 CV 4411, 2024 WL 4346613, at *12 (N.D. Ill. Sept. 30, 2024).

7

explanations to underpin his explicit and implied conclusions concerning Plaintiff's symptoms, daily activities, and ability to work."). The ALJ's decision did not address certain record evidence on plaintiff's ability to perform activities and her limitations. As for the activities of daily living that the ALJ did acknowledge, the ALJ's decision primarily amounts to a recitation of the record evidence and plaintiff's testimony without any clear analysis or explanation of the ALJ's reasoning. *Diane P. v. Saul*, No. 19 C 0782, 2020 WL 4053780, at *9 (N.D. Ill. July 20, 2020) ("[T]he Court has no way to know what conclusion (if any) the ALJ reached regarding Plaintiff's continued problems with activities of daily living."). "Even when there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not 'build an accurate and logical bridge from the evidence to the conclusion.'" *Bryan H. v. Kijakazi*, No. 19 C 2244, 2022 WL 2967423, at *2 (N.D. Ill. July 27, 2022) (quoting *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008)).

The Court cannot find that any error in the ALJ's credibility determination is harmless. "An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding." *Engstrand*, 788 F.3d at 660 (quoting *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014)). *See also Allord v. Barnhart*, 455 F.3d 818, 821–22 (7th Cir. 2006); *Darlene M. v. Kijakazi*, No. 19 CV 6389, 2021 WL 3773291, at *4 (N.D. Ill. Aug. 25, 2021). Neither of these two circumstances applies to the present case. Furthermore, defendant does not argue that any error in the ALJ's evaluation is harmless and such an argument is therefore forfeited. *James M. v. Kijakazi*, No. 20 CV 2082, 2023 WL 3652862, at *7 n.6 (N.D. Ill. May 25, 2023); *Arej v. Sessions*, 852 F.3d 665, 669 (7th Cir. 2017) ("The government has not raised harmless error here, so that argument is waived.") (Sykes, J. concurring).

Because the Court is remanding on this basis, it does not address plaintiff's other arguments. However, this should not be construed as a finding that the ALJ did or did not err in the other ways identified by plaintiff.

## Conclusion

For the foregoing reasons, plaintiff's motion [12] is granted, the decision of the SSA is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with the Court's ruling.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: September 23, 2025**